**COOK & ARRINGTON v. CITIZENS' STATE BANK OF MARLIN et al. (No. 253.)**

(Court of Civil Appeals of Texas. Waco. Feb. 25, 1926. Rehearing Denied March 25, 1926.)

**1. Contracts ⊕⇒47.**

Promise to county auditor, on receiving final payment on road contracts to use fund to pay certain creditors, *held* without consideration and not binding.

**2. Contracts ⊕⇒187(3)—Agreement of contractor with county auditor that debt due from another contractor to bank would be paid held not enforceable, where funds were deposited in bank which paid them out on its debtor's orders.**

Where payment for road contracts was made to two contractors, and amount due one of contractors was deposited in one bank and check on such deposit deposited in another bank, latter bank making payments to depositor's order in expectation that check would be paid, *held* not entitled, where check was not paid in full to enforce agreement of other contractor with county auditor to see that depositor's debt to bank was paid.

**3. Banks and banking ⊕⇒134(1).**

Bank may charge against individual depositor any past-due notes of depositor.

**4. Banks and banking ⊕⇒127.**

Bank accepting check and giving depositor credit or paying cash therefor becomes owner, and may maintain action thereon.

**5. Banks and banking ⊕⇒134(10)—Right to charge check, presented by payee to cover overdraft, against deposit, depended on whether bank paid check in good faith for value and without notice that deposit had been transferred to another bank.**

Where depositor in M. bank deposited check for full amount of account in C. bank, and check drawn on C. bank was presented by payee to M. bank to cover overdraft therein, the right of the M. bank to charge such check against the account depended on whether check was paid by bank in good faith for value and without notice that funds had been transferred to C. bank so as to make M. bank owner thereof.

Appeal from District Court, Falls County; Prentice Oltorf, Judge.

Suit by the Citizens' State Bank of Marlin against the Marlin National Bank and Cook & Arrington, wherein defendant last named brought a cross-action against defendant first named. Judgment on directed verdict for plaintiff against defendant last named, but for defendant first named against plaintiff, and against defendant last named on latter's cross-action, and plaintiff and defendant last named appeal. Judgment for plaintiff against defendant last named reversed and rendered, and for defendant first named against plaintiff reversed and remanded.

Frank Oltorf, of Marlin, for appellants.

Robert Higgins, of Lubbock, and Bartlett & Carter, of Marlin, for appellees.

BARCUS, J. In January, 1922, the firm of Harris & Powell and the firm of Cook & Arrington were awarded certain road contracts in Falls county. The firms, with the consent

---

⊕⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

of all parties at interest, apportioned the work which each firm was to perform. In the payment of the funds as they became due on the respective estimates, a check payable to said two firms jointly would be issued by the county, and the funds would then be divided by them. At the time said contract was made with the county, Harris & Powell assigned their portion of the funds to be paid thereunder to the Citizens' State Bank of Marlin, to secure said bank in the advancements which it made and agreed to make, with which said firm could carry on its work, which assignment was filed with the county auditor. Cook & Arrington were doing their banking with the Marlin National Bank. An estimate on the work done was paid each 30 days, and when the draft was given it was always deposited in the Marlin National Bank, and then Harris & Powell would transfer their portion to the Citizens' State Bank.

The work was completed and the final payment of about $19,000 made on said contract on July 11, 1922, and a draft therefor was issued, payable to said two firms jointly. The same was taken to the Marlin National Bank, where it was cashed, and $8,733.55 was deposited in said bank to the credit of Harris & Powell and the remainder to the credit of Cook & Arrington. This deposit was made after banking hours on the afternoon of July 11th. Immediately thereafter, Arrington, of the firm of Cook & Arrington, and Harris, of the firm of Harris & Powell, went to the Citizens' State Bank, and Harris gave to the Citizens' State Bank a check on the Marlin National Bank for the full amount of said deposit, which was passed to the credit of Harris & Powell in the Citizens' State Bank. At said time, at the joint request of Harris and Arrington, there was paid out of said fund $4,947.30 to various creditors to whom Harris & Powell were indebted; Harris at said time drawing his checks on said fund for said amounts, which were at said time passed to the credit of the respective creditors and duplicate deposit slips issued. Several of said debts were ones that both of said firms were responsible for, but for which, under the testimony, Harris & Powell were primarily and Cook & Arrington secondarily liable. Said payments were made on the insistence of Arrington, in order that his firm might be relieved of any liability thereon. At the time the county auditor delivered the draft to Harris & Powell and Cook & Arrington, he testified Arrington promised to see to it that the claims of Austin Bros. for $2,750, Citizens' State Bank of Marlin for $2,722.35, Marlin Lumber Company for $440 and Phipps Lumber Company for $127.30, would be paid; said claims being written on the back of said draft as being claims to be paid out of said draft, and each of said firms signed their names thereto.

After Harris and Arrington had made disposition of the funds in the Citizens' State Bank as herein stated, Harris issued to I. N. Conyers a check on the Citizens' State Bank for $1,000, to be applied on the open account which the firm of Harris & Powell owed Conyers Live Stock Corporation for feed. On the morning of July 12th, Mr. Glass, the president of the Marlin National Bank, called Conyers to ascertain whether Harris had given him a check for $2,500 to be applied on the Conyers Live Stock Corporation debt and on a note which Harris & Powell had executed to Conyers Live Stock Corporation for $1,500, which note was owned by said bank, and he was informed that he had given him a check drawn on the Citizens' State Bank for only $1,000. Mr. Glass, according to his testimony, went by Conyers' store and obtained said check for $1,000, and deposited same in the Marlin National Bank to the credit of Conyers Live Stock Corporation to cover in part its overdraft, and sent said check to the Citizens' State Bank for payment, which bank refused payment because of insufficient funds. The Citizens' State Bank sent its check which Harris & Powell had drawn on the Marlin National Bank for $8,733.55 to the Marlin National Bank for payment, and the Marlin National Bank refused payment of said check because of insufficient funds. The Marlin National Bank charged up against the fund on deposit by Harris & Powell in said bank, which amounted to a total of about $9,000, the $1,500 note which Harris & Powell had given to the Conyers Live Stock Corporation and the $1,-000 check drawn on the Citizens' State Bank which Harris & Powell had given to Conyers on the night of the 11th. Under an agreement between the two banks, without any one waiving any rights, the remainder of said fund, about $6,500, was paid to the Citizens' State Bank, and same lacked $942.01 of being a sufficient amount to entirely pay the $2,722.35 which Harris & Powell were indebted to said bank, and which was secured by the assignment of their contract with the county, after deducting the amounts which the bank had paid the previous night at the request of Harris and Arrington.

The Citizens' State Bank brought this suit against the Marlin National Bank and Cook & Arrington for said sum. Harris & Powell had been adjudged bankrupts, and their estate was insolvent. The Citizens' State Bank claimed that Cook & Arrington were indebted to it for said amount because they had agreed with the county auditor of Falls county to see that said claim was fully paid out of said final estimate, and claimed that the Marlin National Bank was responsible because it had refused to honor the check of Harris & Powell drawn on said funds and had illegally retained possession of said funds, and that it knew that said funds had been assigned to the Citizens' State Bank to pay said debt. Cook & Arrington, on their cross-action, asked for judgment against the Mar-

lin National Bank for any sum the Citizens' State Bank recovered against them.

The cause was tried to a jury, and, at the conclusion ·of the testimony, the court instructed the jury to return a verdict in favor of the Marlin National Bank as against the Citizens' State Bank, and in favor of the Citizens' State Bank against Cook & Arrington for the amount of the debt, and against Cook & Arrington on their cross-action over against the Marlin National Bank. From said judgment Cook & Arrington and the Citizens' State Bank have separately perfected their appeal.

[1, 2] Cook & Arrington contend that, under the undisputed facts in this case, the trial court should have instructed a verdict in their favor. We sustain this contention. Cook & Arrington were under no legal obligation to the Citizens' State Bank to pay the debt which Harris & Powell owed it. The promise which the county auditor said they made to him, which they dispute, that they would see to it that the bank's claim was paid, was entirely without any consideration, and was not in any way binding upon them. If, however, it could be said that there was any consideration for said promise, a sufficient amount of funds from said draft was paid the Citizens' State Bank to entirely discharge all of the debt to the Citizens' State Bank, as well as each of the other three obligations listed on said draft, and thereby the promise, if made, was carried out, and the funds actually placed in the custody and control of the Citizens' State Bank. Mr. Fountain of the Citizens' State Bank testified that the funds derived from the last estimate were handled in the same way that all other estimates were handled, in that the original amounts were deposited in the Marlin National Bank, part to Cook & Arrington and part to Harris & Powell, and that thereafter Harris & Powell would each time transfer their funds to the Citizens' State Bank, and that, when Harris gave him (Fountain) a check on the Marlin National Bank for the $8,733.55, he made no further inquiry and relied implicitly on the validity of said deposit, and without question cashed checks for Harris on said deposit for about $5,000; more than $1,500 thereof being checks to pay debts of Harris & Powell that were not secured in any way by said contract and were not listed on said draft to be paid out of said funds. Mr. Fountain of the Citizens' State Bank testified that, when Mr. Harris came to the bank with the deposit slip showing he had the $8,733.55 in the Marlin National Bank and gave him a check transferring same to the Citizens' State Bank, he assumed Harris would have sufficient money to pay all his debts, and that his payment of the claims for Harris was a voluntary act on his part. The Citizens' State Bank, having of its own free will and accord paid the debts of Harris & Powell on the strength of the deposit slip, could not under any phase of the record hold Cook & Arrington for the amount sued for herein.

[3, 4] The only issue necessary to be determined on this appeal between the Marlin National Bank and the Citizens' State Bank is the right of the Marlin National Bank to use the funds which Harris & Powell had deposited in the Marlin National Bank to pay the $1,000 check which Harris & Powell had given to Conyers for the Conyers Live Stock Corporation. The president of the Marlin National Bank testified that said bank held the note of Harris & Powell, which was past due, and which had been given to Conyers and by Conyers transferred to the bank. It is now a well-settled principle of law that a bank has a right to charge against an individual depositor any note or notes which it has which are past due against said depositor. Beatty-Folsom Co. v. Edwards (Tex. Civ. App.) 238 S. W. 340; Neely v. Grayson County Nat. Bank, 61 S. W. 559, 25 Tex. Civ. App. 513; Osccola Mercantile Co. v. Nabors (Tex. Civ. App.) 221 S. W. 991; Owens v. American Nat. Bank, 81 S. W. 988, 36 Tex. Civ. App. 490. It is also the established law that, where a bank accepts a check and gives a depositor credit for the amount thereof or pays cash· therefor, said check then becomes the property of the bank, and the bank can maintain a suit thereon. Chrisman v. Lumberman's Nat. Bank (Tex. Civ. App.) 163 S. W. 651; Provident Nat. Bank v. Cairo Flour Co. (Tex. Civ. App.) 226 S. W. 499; Tradesmen's State Bank v. Fort Worth Elevators Co. (Tex. Civ. App.) 214 S. W. 656; Burton v. United States, 25 S. Ct. 243, 196 U. S. 283, 49 L. Ed. 482; 7 Corpus Juris, p. 635; 3 R. C. L. 524.

[5] The question in this case, therefore, is, Did the Marlin National Bank in good faith, · for value, and without notice that the funds had been transferred to the Citizens' State Bank, come into possession and become the owner of the $1,000 check before the $8,733.55 check was presented by the Citizens' State Bank to it for payment? Unless the Marlin National Bank was in good faith and for a valuable consideration and without notice, the owner of and in possession of the $1,000 check prior to said time, it would not have the right to charge the amount of said check against the account of Harris & Powell. The only right the Marlin National Bank had was to charge against the Harris & Powell deposit whatever notes and checks it owned and possessed prior to the time it had knowledge of the fact that the fund had been transferred to the Citizens' State Bank. If the Marlin National Bank took the check in question from Conyers for collection only, then it was not the property of the Marlin National Bank, and it did not have the right to charge same against the Harris & Powell deposit. 3 R. C. L. 524; 7 Corpus Juris, 736; Conn v. San Antonio National Bank (Tex.

Com. App.) 249 S. W. 1045. As to when the $1,000 check was received by and became the property of the Marlin National Bank, and as to whether it had notice that the funds had been transferred or assigned to the Citizens' State Bank, and as to when the Conyers Live Stock Corporation deposited same in the Marlin National Bank, and as to when the $8,733.55 check was presented by the Citizens' State Bank to the Marlin National Bank for payment, and as to which occurred first, were very closely drawn issues of fact, and the trial court should have submitted same to the jury for its determination. It was error for the trial court to instruct the jury to find a verdict in favor of the Marlin National Bank as against the Citizens' State Bank.

The judgment of the trial court as between Cook & Arrington and the Citizens' State Bank is here reversed, and rendered in favor of Cook & Arrington and against the Citizens' State Bank, and, as between the Citizens' State Bank and the Marlin National Bank, the cause is reversed and remanded.