CENTRAL TEXAS EXCH. NAT. BANK OF WACO v. FIRST NAT. BANK OF WACO et al. (No. 6428.)*

(Court of Civil Appeals of Texas. Austin. May 10, 1922. Rehearing Denied June 14, 1922. Order Set Aside June 21, 1922. Rehearing Denied Oct. 4, 1922.)

1. Appeal and error &⇒694(1)—In absence of a statement of facts, findings of trial court are binding.

In absence of a statement of facts, findings of the trial court are binding on an appellate court.

2. Garnishment &⇒173—Finding construed not to mean that a fund had not been assigned to check holders prior to garnishment.

Under Rev. St. art. 279, providing that after the service of writ of garnishment it is unlawful for the garnishee to pay to the defendant any debt or deliver to him any effects, and article 293, providing that if the garnishee was indebted to the defendant when the writ was served the court shall render judgment against the garnishee for the amount of such indebtedness, where a garnishee paid checks

written before the garnishment was served after service of the garnishment, a finding that at the time the garnishment was served the garnishee was indebted to defendant in a certain amount, considered in relation to the entire findings and conclusions, does not amount to an implied finding that the fund had not been assigned to the checkholders prior to the garnishment.

3. Trial &=404(2)—Statement in conclusions of law construed not to amount to a finding that fund in bank was not assigned to holders of a check.

In proceedings against a garnishee for payment of checks written before service of the garnishment and paid after service of the garnishment, a statement in the conclusions of law by the trial court that there was an assignment of funds in the hands of the garnishee did not amount to a finding that there was an assignment of such funds.

4. Garnishment &=173—Conclusion of law held not sustained by facts.

In proceedings by a creditor against a garnishee for payment of funds on checks written by a debtor prior to the service of garnishment and paid after the service of garnishment, in the absence of a finding as a fact by the trial court that there was an assignment of the funds before the service of garnishment, conclusions of law that there was such an assignment, and that the payees of the checks had a prior right to the creditor were not supported by facts.

On Rehearing.

5. Garnishment &=47—Payment of checks after service of garnishment held to render garnishee liable.

In view of Uniform Negotiable Instruments Act, §§ 127, 132, 185, 189 (Vernon's Ann. Civ. St. Supp. 1922, arts. 6001—127, 6001—132, 6001—185, 6001—189), where, after a bank was served with a garnishment, it paid checks written before service of the garnishment, the bank became liable to pay the amount which it held to the credit of the debtor at the time of service of the garnishment.

Appeal from District Court, McLennan County; H. M. Richey, Judge.

Action by the Central Texas Exchange National Bank of Waco against the First National Bank of Waco, garnishee, and others. From judgment for plaintiff for less than it asked, plaintiff appeals. Reversed and rendered.

Witt, Terrell & Witt, of Waco, for appellant.

L. Aubrey and W. L. Eason, both of Waco, for appellees.

BRADY, J. This is a garnishment proceeding between the appellant and the First National Bank of Waco, garnishee. The issues on appeal are sufficiently indicated by the findings and conclusions of the trial court, which are as follows:

"(1) I find that prior to and on October 3, 1919, S. Levy was indebted to the Central Texas Exchange National Bank of Waco, Tex., in the principal sum of $1,640. That suit was then pending in this court on said indebtedness in cause No. 1725 on the docket of this court, styled Central Texas Exchange National Bank v. S. Levy.

"(2) I find that on June 3, 1920, in said cause No. 1725, judgment was rendered in said cause in favor of the Central Texas Exchange National Bank against the defendant S. Levy therein, for the principal sum of $2,042.17.

"(3) I find that S. Levy is now indebted to the Central Texas Exchange National Bank in the sum of $2,042.17, and was so indebted at the time the writ of garnishment in this cause was sued out and served on the First National Bank of Waco, Tex.

"(4) I find that the writ of garnishment issued in this cause was served on the First National Bank of Waco, Tex., on October 3, 1919, at 11:25 a. m.

"(5) I find that at the time said writ of garnishment was served on the First National Bank of Waco, Tex., that said bank had on deposit, as shown by its books, funds in the name of S. Levy to the amount of $46.40, and at said time had on deposit, as shown by its books, funds in the name of D. H. Levy to the amount of $830.69; and I find that the funds in the name of S. Levy and in the name of D. H. Levy in said bank were the funds and property of S. Levy; and I find that at the time of the service of the writ of garnishment herein on the First National Bank of Waco, Tex., that said bank was indebted to S. Levy in the sum of $877.09.

"(6) I find that after said writ of garnishment was served on said bank, and prior to the time that said bank paid out any of the funds on deposit in said bank in the name of D. H. Levy or S. Levy, that said bank was duly notified by the attorney representing the Central Texas Exchange National Bank in this cause, that said funds on deposit in said bank in the name of D. H. Levy in fact belonged to S. Levy, and that the indebtedness of said bank by reason of the funds then on deposit was an indebtedness due to S. Levy, whether deposited in the name of S. Levy or D. H. Levy.

"(7) I find that subsequent to the service of the writ of garnishment herein on the First National Bank of Waco, Tex., that said bank paid the following checks which were drawn by S. Levy, to wit:

"One check dated September 30, 1919, for $400, payable to L. M. Moss, payment of which was made on October 6, 1919, by said First National Bank of Waco, Tex.

"One check dated September 30, 1919, payable to J. D. Willis, for $386, which was paid by said bank October 3, 1919.

"One check dated September 22, 1919, payable to O. Malhmon, for $5.50, paid by said bank October 6, 1919.

"One check dated October 3, 1919, payable to, Brazos Packing Company, for the sum of $38.69, paid by bank October 6, 1919.

"(8) I find that the above-described four checks were issued and delivered by S. Levy to the payees mentioned therein on the date they bear and before the issuance and service of the writ of garnishment herein, and were issued

and delivered by the said S. Levy to the payees mentioned therein in payment of debts that the said S. Levy then owed the payees mentioned therein.

"Conclusions of Law.

"1. I conclude as a matter of law that the issuance · and delivery of the four above-mentioned checks by S. Levy to the payees mentioned therein before the issuance and service of the writ of garnishment herein on said bank, totaling $830, was an assignment of the funds of S. Levy in said bank to the payees mentioned in said checks to the amount of $830, and that the payees in said checks have a prior and superior right to said $830 as against the Central Texas Exchange National Bank, thereby leaving the sum of $46.40 that said First National Bank was indebted to the said S. Levy; and I therefore conclude that the Central Texas Exchange National Bank is entitled to judgment against the First National Bank for only the sum of $46.40."

Opinion.

The controlling question here is whether the appellant, by service of the writ of garnishment, prior to the presentation and payment of the four checks drawn against the general deposit in the name of D. H. Levy, acquired rights to the fund, superior to those of the holders of the checks.

[1] There is no statement of facts, and the findings of the trial court are, of course, binding upon us.

[2] It is claimed by counsel for appellant that since the court found that, at the time the writ was served, the First National Bank of Waco was indebted to S. Levy in the sum of $877.09, appellant was entitled to judgment for that · amount. The contention is chiefly based upon our garnishment statutes, especially articles 279 and 293, Rev. Stat. The claim has some literal support in the terms of these statutes. But the findings under discussion must be considered with relation to the entire findings and conclusions. When thus viewed, we are of the opinion that they mean no more than that the deposit in the name of D. H. Levy was owned by S. Levy, as against the claim that the fund was owned by D. H. Levy. It manifestly was not the intention of the trial court to impliedly find thereby that the fund had not been assigned to the checkholders prior to the garnishment. To so construe the findings would be 'directly in the face of the conclusions of law, and the evident theories upon which the court rendered judgment.

[3] Upon the other hand, it is argued for appellee bank that the court found that there was an assignment of the funds of S. Levy in said bank to the payees mentioned in said checks to the amount of $830, and that therefore judgment was properly denied appellant for that amount. This claim is inadmissible, because it is obvious that the trial court did not find this as a fact. The language quoted is found in the conclusions of law,

and is nothing more than a legal theory adopted by the court, in disposing of the case, and was founded upon the facts as previously found and stated. Believing that neither of these contentions is sound, we will now state the relevant rules of law thought to be determinative of the appeal.

[4] In his excellent treatise on the Law of Garnishment, Mr. Rood states the rule upon this question. He calls attention to the decisions holding that when an order or draft, for a valuable consideration, is drawn upon the whole of a particular fund, it operates as an equitable assignment of the fund, and when so intended by the parties, the intent controls. Sections 70 and 71. He then says:

"In decisions to the contrary, it is said that all checks are payable only at the banking house, not in the order in which they are drawn, but in the order in which they are presented for payment, from which it follows that the drawer can defeat any check by drawing out his funds upon subsequent checks first presented, and that garnishment has the same effect." Section 71.

This author then concludes the subject with this statement:

"It is believed that, with the above exceptions, the holder of a mere order upon the garnished fund has no claim to it which he can maintain against a garnishment served between the giving of such order and its acceptance by the drawee. As soon as a payee of an order receives and the drawee accepts it, the assignment is complete, and the payee takes precedence to subsequent garnishments." Section 72.

An instructive case cited by Mr. Rood is Bullard v. Randall, 1 Gray (Mass.) 605, 61 Am. Dec. 433. The opinion is by the eminent Chief Justice Shaw, and clearly announces the reasons for the rule.

The Texas cases cited, in support of the respective contentions of the parties, are in apparent conflict. Neely v. Bank, 25 Tex. Civ. App. 513, 61 S. W. 559, decided by ·the Dallas Court of Civil Appeals, involved facts similar to ·the instant case. It was held that the giving of a check operated as an equitable assignment, and the check holder's rights were superior to those of the plaintiff in garnishment. However, · it was emphasized by the court that the check was drawn upon a specific fund, and this fact may possibly serve to distinguish that case from the case at bar. If not to be differentiated, we do not feel inclined to ·follow it.

Burns v. Lowe, 161 S. W. 942, another authority relied upon by the garnishee bank, is a decision by the Fort Worth Court of Civil Appeals, and the opinion cites Neely v. Bank. But the facts seem to have been substantially different. There, the debtor delivered a fund of money to his wife, with express instructions to deliver it to his landlord, in payment of rent. The fund was the proceeds

of crops, upon which the landlord presumably had a lien. Under the circumstances, it appeared that the money became the property of the landlord, when delivered to the wife for him, and the garnishing creditor could have had no greater rights to the fund than his debtor.

Bank v. Davis (Tex. Civ. App.) 149 S. W. 290, cited by appellant, was a decision by this court, and merely held that the holder of an unaccepted check could not maintain an action against the bank. It was not a controversy between a garnishing creditor and the holder of a check, as here. Moreover, Justice Jenkins pointed out that a bank deposit is clearly the subject of an assignment, and whether there is an assignment will depend upon the facts of the particular case. It was held, under the specific facts, that the drawing of the check upon a general deposit did not alone show an assignment.

Appellant also relies upon. Bank v. Plow Co. (Tex. Civ. App.) 168 S. W. 420, and cases there cited. But it is expressly recognized in that case that a check upon a general deposit may constitute an assignment, according to the understanding and intention of the parties, which will control. Therefore the case is in line with the weight of authority, as stated by us above, and turned upon the particular facts. The holding was that since the court did not find any agreement or intention to assign the fund, the judgment denying it would be upheld.

It follows that since the court did not find as a fact that there was an assignment here, the conclusions of law are not sustained by the facts, nor is the judgment that was rendered. Therefore the case should be reversed and remanded for a finding upon this controlling question.

It remains to dispose of the contention by appellant that, by virtue of article 6001-A, §§ 185, 127 and 189, of the Uniform Negotiable Instruments Act, it is now settled by statute that a check does not operate as an assignment until the bank accepts or certifies it. The argument upon this point is very plausible, but we do not think these articles were intended to change the law, as previously existing, nor that they apply to the controversy here. The act does not attempt to fix rights as between holders of checks and garnishment creditors. That question is left to the rules of the law merchant. See article 6001-A, § 196.

Sections 127 and 189 relate only to the liability of the drawee or the bank upon which the check is drawn.

The judgment is reversed, and the cause remanded.

Reversed and remanded.

### On Rehearing.

[5] Counsel for appellee have filed an able argument on motion for rehearing. They insist that we have held against the weight of authority, in deciding that the giving of the checks in controversy did not constitute an equitable assignment, and did not confer rights upon the check holders superior to those of the garnishing creditor. The insistence is also made that even if proof of an agreement or the intention of the parties to assign the fund was necessary, as held by us, we should indulge the presumption that the trial court impliedly so found. This upon the ground that appellant did not request additional findings nor complain of the omission of the court in this respect.

We are now of the opinion, however, that it is quite immaterial what the rule of the law merchant or the common law was, upon the question of what was necessary to constitute an assignment. The basis of this conclusion is that we misinterpreted the meaning and effect of the Uniform Negotiable Instruments Act of the Thirty-Sixth Legislature. A more mature consideration of the terms of that statute has convinced us that it is decisive of the case and adversely to appellee.

Article 6001-A, § 185, provides:

"A check is a bill of exchange drawn on a bank payable on demand. Except as herein otherwise provided, the provisions of this act applicable to a bill of exchange payable on demand apply to a check."

Section 127 is as follows:

"A bill of itself does not operate as an assignment of the funds in the hands of the drawee available for the payment thereof, and the drawee is not liable on the bill unless and until he accepts the same."

Section 189:

"A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless and until it accepts or certifies the check."

Section 132 is also pertinent, and reads:

"The acceptance of a bill is the signification by the drawee of his assent to the order of the drawer. The acceptance must be in writing and signed by the drawee. It must express that the drawee will perform his promise by any other means than the payment of money."

This act has not been construed by any of the appellate courts of this state, as far as we are aware, but in First Nat. Bank v. Hargis Bank & Trust Co., 170 Ky. 690, 186 S. W. 471, the Court of Appeals of Kentucky said that the Negotiable Instruments Law had then been adopted by 38 states and had been given a practically uniform application. The court held that, in the absence of acceptance or certification, there was no assignment of the fund upon which the check was drawn. Such, also, was the holding of the same court in Boswell v. Bank, 123 Ky. 485, 96 S. W. 797. The question was also considered by the Supreme Court of Idaho in Kaesemeyer v. Smith, 22 Idaho, 1, 123 Pac.

943, 43 L. R. A. (N. S.) 100, and it was held that a check given prior to the service of a writ of garnishment, but paid by the garnishee after it had been served with the writ, did not operate as an assignment of the funds of the drawer on deposit with the bank. This is the exact question before us, and the holding was based upon similar provisions of the statute.

Having adopted the Negotiable Instruments Law from other states, we likewise adopt the interpretation previously placed thereon by the courts of the sister states; at least, such is the presumption. But we may add that we think the statute is plain and unambiguous, and prescribes a legal standard for determining when an assignment results by which we are bound. Doubtless the Legislature had in mind the conflict of decisions and meant to set the question at rest.

Since, under the plain provisions of the statute, there was no assignment of the checks in question, the bank was not liable to the holders when it voluntarily paid their checks. If it was not liable to them, then it was still indebted to the drawer of the checks, the depositor, when the garnishment was served. Under the findings of the court, it was so indebted, and we conclude that the rights of the garnishing creditor were superior and legally impounded the funds.

There is no pretense that the garnishee bank accepted or certified the checks or any of them, before the writ was served, nor any room for an implied finding to that effect, under the pleadings and issues made.

We conclude that the judgment should be reversed and here rendered for appellant, and that the appellee bank is not entitled to attorney's fees. Therefore, upon our own motion, our former judgment is set aside and judgment rendered as above indicated.

Reversed and rendered.